Jacinto A. SABANGAN, Jr.; Esther Hae Jin Sohn, Plaintiffs–Appellants,

and

Eun Kyung Jang; Frances Soo–Jin Sohn; Dianne Go Guiao; Seung Gin Lee; Kyung Min Yu; Hyun Min Yu; Paul Oh; Jun Sub Ham; Claudagh S. Pascua; Irineo Delos Santos Ignacio; Roy James B. Mendoza; Christopher T. Matias; Leonardo Supnet Pascua, Jr.; Christopher Supnet Pascua; Da–Hee Ju, Mi Sook Kim; Ah Lam Jung; Joon Su Pae; Ko Woon Park; Ri Na Jung; Heog–Jun Choi; Sung Hyun Lim; Maria Corazon B. Mendoza; Marias C. Elbo Jr.; Evelyn C. Elbo; Brian M. Flores, Plaintiffs,

v.

Colin POWELL, Defendant–Appellee.

No. 03–16426.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 6, 2004.

Filed July 1, 2004.

Reynaldo O. Yana, Saipan, Commonwealth of the Northern Mariana Islands, for the plaintiffs-appellants.

Gregory Baka, Assistant United States Attorney, Saipan, Commonwealth of the Northen Mariana Islands, for the defendant-appellee.

Before: FARRIS, NOONAN, and RAWLINSON, Circuit Judges.

NOONAN, Circuit Judge:

Jacinto A. Sabangan, Jr., and Esther Hae Jin Sohn appeal the judgment of the district court against them in their suit against Colin Powell, Secretary of State, to establish that they are citizens of the United States and so entitled to United States passports. Reading section 1 of the Fourteenth Amendment as applied to the Commonwealth of the Northern Mariana Islands (the CNMI) by the Covenant between the CNMI and the United States, (the Covenant), Act of Mar. 24, 1976, Pub.L. No. 94–241, 90 Stat. 263, *reprinted in* 48 U.S.C. § 1801, we conclude that Sabangan and Sohn are citizens of the United States. We reverse the judgment of the district court and remand.

## FACTS AND PROCEEDINGS

The Covenant, section 501(a) became effective January 9, 1978. Sohn was born December 12, 1982. Sabangan was born November 30, 1983. Both Sohn and Sabangan were born in the CNMI.

June 16, 1999, the State Department rejected Sabangan's claim of citizenship and application for a United States passport. August 26, 2002, Sohn's claim and application were similarly rejected. September 5, 2002, Sabangan and Sohn began this action in the district court, seeking a declaration that they were citizens of the United States and an injunction ordering the department to issue them United States passports. July 10, 2003, the district court dismissed their complaint for failure to state a claim, and July 12, 2003, judgment was entered against them.

Sabangan and Sohn appeal.

## ANALYSIS

The Fourteenth Amendment, section 1 reads:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Section 501(a) of the Covenant reads:

To the extent that they are not applicable of their own force, the following provisions of the Constitution of the United States will be applicable within the Northern Mariana Islands as if the Northern Mariana Islands were one of the several States: ... Amendment 14, Section 1....

Evidently section 501 of the Covenant makes all of section 1 of the Fourteenth Amendment applicable to the CNMI, which is to be regarded as "one of the several States." Sabangan and Sohn were therefore born in a jurisdiction at a time in which by force of the Constitution itself they became citizens of the United States.

The government opposes this straightforward reading. First, the government says that the Fourteenth Amendment, section 1 only applies of its own force to persons who are actually born in the Unit-

ed States. But the government abandons this argument by admitting that Congress has power to confer citizenship on persons born in territories of the United States as Congress has done in various times as to persons born in Alaska, Guam, Hawaii, and Puerto Rico. Obviously it is not the Constitution alone but the act of Congress applying section 1 of the Fourteenth Amendment that make Sabangan and Sohn citizens of the United States.

Second, the government argues that the straightforward reading of the Covenant makes section 303 of the Covenant superfluous. This section reads:

> All persons born in the Commonwealth on or after the effective date of this Section and subject to the jurisdiction of the United States will be citizens of the United States at birth.

Congress, however, has duplicated the Fourteenth Amendment, section 1, in another important statute, the Immigration and Nationality Act, providing that persons "born in the United States, and subject to the jurisdiction thereof" are citizens of the United States. 8 U.S.C. § 1401(a). No one has supposed that this emphatic restatement of the Constitution was a silly or superfluous legislative gesture.

The government persists: Section 301(a) of the Covenant provides United States citizenship for

> all persons born in the Northern Mariana Islands who are citizens of the Trust Territory of the Pacific Islands on the day preceding the effective date of this Section, and who on that date are domiciled in the Northern Mariana Islands or in the United States or any territory or possession thereof.

Surely, the government suggests, this specific section, which became effective only in 1986, was superfluous if section 501 of the Covenant had already in 1978 conferred citizenship on those born in the CNMI.

But section 301(a) is not superfluous. It speaks to the case of citizens of the Trust Territory of the Pacific Islands (the TTPI). The TTPI embrace a wider area than the CNMI, including most of the area denominated as Micronesia. The CNMI is only one of six administrative districts of Micronesia. The others are Yap, Truk (Chuuk), Ponape, (Pohnpei), Palau (Belau) and the Marshall Islands. *See Commonwealth of N. Mariana Islands v. United States,* No. Civ.A. 99–0028, 2003 WL 22997235, at *2 (D.N.Mar.I. Aug. 7, 2003). A class whose citizenship was distinct from those in the Northern Mariana was thereby given United States citizenship. As the government concedes—indeed argues—the United States lacked sovereignty over parts of the TTPI. *See Temengil v. Trust Territory of the Pac. Islands,* 881 F.2d 647, 651–52 (9th Cir.1989).

Thirdly, the government argues that the United States lacked sovereignty over the CNMI prior to 1986. The government adds that the date the United States assumed sovereignty is "critical to the correct disposition of this case." Implicitly the government appears to argue that United States citizenship may be granted only to persons born in areas over which the United States is sovereign. But that is not the law. A child born in France to parents who are United States citizens is a citizen of the United States, 8 U.S.C. § 1401(c), although the United States does not exercise sovereignty in France.

Finally, the government argues that section 501's language making the Fourteenth Amendment applicable as if the CNMI "were one of the several States" only means "that the Northern Mariana Islands were to be treated 'as if' they were a State, but not 'as if' they were 'in the United States'." But how could the CNMI be treated as a State without being treated as being in the United States? No State

governed by the Constitution of the United States exists in a realm outside the realm comprehended by the United States.

The Covenant, section 501 makes section 1 of the Fourteenth Amendment apply as if the Northern Mariana Islands "were one of the several States." The language is precise. It speaks as the Constitution itself speaks—e.g., "The House of Representatives shall be composed of Members chosen every second Year by the People of the several States." U.S. Const. art. I, § 2. "The Citizens of each State shall be entitled to all privileges and immunities of Citizens in the several States." U.S. Const. art. IV, § 2. The government's effort to distinguish "one of the several States" from a State within the United States depends on gossamer reasoning that common sense must blow away.

For the reasons stated, the judgment of the district court is REVERSED and the case is REMANDED for proceedings consistent with this opinion.